UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-72-SEB-MJD-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| TOM SMITH, III | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cr-00072-SEB-MJD ) |
| TOM SMITH, III, | ) -01 ) |
| Defendant. | ) |

## ORDER

Defendant Tom Smith, III has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 72. Mr. Smith seeks immediate release from incarceration, or, in the alternative, to serve the remainder of his custodial term on home confinement.[1] For the reasons explained below, his motion is **DENIED**.

### I.  Background

In August 2018, Mr. Smith pled guilty to one count of possession with intent to distribute a controlled substance (cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and 851 (Count 1), and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1)

---

[1] Pursuant to statute, the location of a prisoner's confinement is the sole province of BOP, and its placement decisions are "not reviewable by any court." 18 U.S.C. § 3621(b). The Court therefore does not have the authority to order the remainder of Mr. Smith's sentence to be served on home confinement. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (district court lacks authority to order transfer to home confinement); *United States v. Council*, No. 1:14-CR-14-5, 2020 WL 3097461, at *7 (N.D. Ind. June 11, 2020); *United States v. Neeley*, No. 1:14-cr-00096, 2020 WL 1956126, at *2 (S.D. Ind. Apr. 23, 2020). Instead, in accordance with § 3582(c)(1)(A), the Court considers whether to reduce Mr. Smith's sentence to time served. *See United States v. Millbrook*, No. 20-2147, 2021 WL 960743, at *2 (7th Cir. Mar. 15, 2021) (finding no error when district court failed to discuss defendant's alternative request for transfer to home confinement because the court had no authority to grant the request under § 3582, which authorizes only sentence "reductions").

(Count 2). Dkts. 56, 59. Forming the basis for his guilty plea, Mr. Smith stipulated that in March 2017, he sold cocaine on two occasions to a confidential informant. Dkt. 34; *United States v. Smith*, 921 F.3d 708, 710 (7th Cir. 2019). During a search of Mr. Smith's home, officials found 12.83 grams of cocaine base, 111.57 grams of cocaine powder, a rifle, two panels of a body-armor vest, and a digital scale. *Id.* Officials also found a loaded Omni 5.56-millimeter/.223-caliber rifle in the bedroom. Dkt. 34. At sentencing, the Court determined that the career-offender enhancement was appropriate and sentenced Mr. Smith to 188 months of imprisonment on Count 1 and 120 months of imprisonment on Count 2, to run concurrently. Dkt. 59. The Court also imposed 6 years of supervised release. *Id.* The Bureau of Prisons ("BOP") lists his anticipated release date (with good-conduct time included) as July 22, 2030.

Mr. Smith is 37 years old. He is currently incarcerated at FCI Milan in Milan, Michigan. As of May 5, 2021, the BOP reports that one inmate and 4 staff members at FCI Milan have active cases of COVID-19; it also reports that 247 inmates at FCI Milan have recovered from COVID-19 and that 3 inmates at FCI Milan have died from the virus. https://www.bop.gov/coronavirus/ (last visited May 5, 2021).

In October 2020, Mr. Smith filed a pro se motion for compassionate release. Dkt. 72. The Court appointed counsel. Dkt. 73. Appointed counsel filed a supporting brief/memorandum, dkt. 81, the United States filed a response in opposition, dkt. 83, and Mr. Smith filed a reply, dkt. 84. Thus, the motion is now ripe for decision.

**II.    Discussion**

Mr. Smith seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 81. Specifically, he contends that his underlying medical conditions (a prior splenectomy, a prior partial lung removal, being a former cigarette

3

smoker and his age range), which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce his sentence to time served. *Id.* Mr. Smith further argues that his need to help care for his minor daughter and disabled sister also establishes extraordinary and compelling reasons to grant his motion. *Id.* In response, the United States argues that Mr. Smith has not shown extraordinary and compelling reasons to grant release; that he remains a danger to the community if released; and that the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. Dkt. 83.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or

---

[2] The United States concedes that Mr. Smith has exhausted his administrative remedies. Dkt. 83 at 3.

4

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health

5

decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in

§ 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction;[3] (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Smith first argues that he establishes extraordinary and compelling reasons justifying his release because he is needed to help care for his 3-year-old daughter, D.B. Dkt. 81. Both his parental rights and D.B.'s mother's parental rights were previously terminated. D.B. is living with Mr. Smith's twin sister, who is employed by the United States military and provides a stable environment for her. Mr. Smith's sister is also in the process of adopting D.B. If released, Mr. Smith plans to live with his twin sister and help her to raise D.B., as well as to help with the care of their older sister who suffers from disabilities. Neither of these circumstances establish extraordinary and compelling reasons justifying compassionate release. While it is admirable that Mr. Smith wishes to help with the care of his daughter, it is clear that D.B. has a willing and able caretaker to provide for her and who plans to continue to provide for her as evidenced by the adoption proceedings. Similarly, with regards to his disabled sister, many inmates have family members whom they might like to support; however, the desire to care for an ill sister is not an extraordinary and compelling reason warranting a sentence reduction. *Cf. United States v. Trice*, No. 1:13-cr-222-TWP-DML-1, Dkt. 114 at 5 (S.D. Ind. Aug. 4, 2020) (collecting cases about defendants requesting compassionate release to care for elderly or ill parent); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD-1, dkt. 33 (S.D. Ind. Aug. 12, 2020) (same); *United States v.*

---

[3] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180-81, the Court has considered the rationale provided by the warden in denying Mr. Smith's administrative request for relief. Mr. Smith's warden appears not to have considered the possibility that Mr. Smith could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement. *See* dkt. 81-4. Thus, the warden's decision provides little guidance to the Court's analysis.

*Crandle*, 2020 WL 2188865, at *3 & n.27 (M.D. La. May 6, 2020) (same); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."). Thus, his family circumstances do not present an extraordinary and compelling reason to reduce his sentence.

Mr. Smith also asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case because he has various conditions (including a prior splenectomy, a prior partial lung removal, being a former cigarette smoker and his age range) that increase his risk of experiencing severe COVID-19 symptoms. Dkt. 81. The CDC (Centers for Disease Control) has recognized that being a former cigarette smoker can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 3, 2021). While it appears that Mr. Smith may be managing his conditions while incarcerated, the Court will assume that Mr. Smith's risk of developing severe symptoms if he contracts COVID-19 creates an extraordinary and compelling reason that could warrant a sentence reduction.

This does not end the analysis, however, because the Court finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Smith's request for compassionate release. The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the

defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Mr. Smith's motion.

Here, Mr. Smith suffers from at least one medical condition that increase his risk of experiencing severe symptoms if he contracts COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 3, 2021) (identifying being a former smoker as a condition that can make you more likely to get severely ill from COVID-19). While FCI Milan experienced a significant outbreak of COVID-19, the BOP's efforts to control the virus among the inmate population appear to be having some success. https://www.bop.gov/coronavirus/ (last visited May 3, 2021) (showing that only 2 inmates at FCI Milan have a current COVID-19 infection). The BOP has also actively begun vaccinating inmates against COVID-19, *see* https://www.bop.gov/coronavirus/ (last visited May 5, 2021). As of April 30, 2021, 217 inmates and 150 staff members at FCI Milan have received both doses of the COVID-19 vaccine. *Id.* In addition, the BOP reports that, by mid-May 2021, all inmates will have been provided the opportunity to be vaccinated. *See* https://www.bop.gov/resources/news/20210415_hearing.jsp (last visited May 3, 2021). That said, the nature of prisons means that the virus can spread quickly and that inmates have little ability to protect themselves from the virus. In short, the Court is aware of the risk that Mr. Smith faces from COVID-19 and has given it appropriate weight in its consideration of the § 3553(a) factors.

Also weighing in Mr. Smith's favor under the Court's § 3553(a) analysis, during his four years of incarceration, Mr. Smith has maintained a clean disciplinary record. The BOP deems him to be a "low risk" for recidivism and gave him a low security classification. Mr. Smith states that he works as an orderly and is currently enrolled in a paralegal certificate correspondence course through the Blackstone Career Institute. Mr. Smith further represents that he regularly attends Alcoholics Anonymous meetings and has completed a culinary arts program, the InsideOut Dad program, the Exodus program and a drug education course.

Weighing against him, Mr. Smith possessed a significant amount of cocaine and a weapon at the time of his arrest. He also has two serious convictions in his criminal history, including a federal conviction in 2004 for possession with intent to distribute 50 grams or more of cocaine base, for which he was sentenced to 57 months in BOP custody. Dkt. 47. Mr. Smith was released to supervised release in 2007, but in 2013, his supervised release was revoked, and he served an additional 27 months of imprisonment. In 2009, Mr. Smith was convicted of felony dealing in cocaine and felony unlawful possession of a firearm by a serious violent felon and sentenced to 10 years of imprisonment. In addition to these significant crimes, Mr. Smith has also only served approximately 30% of his sentence and is not scheduled to be released for another 9 years.

In light of these considerations, the Court finds that releasing Mr. Smith early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes. The Court is sympathetic to the risks Mr. Smith faces from COVID-19 but does not find that those risks warrant releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because

defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III. Conclusion

For the reasons stated above, Mr. Smith's motion for compassionate release, dkt. [72], is **denied**.

**IT IS SO ORDERED.**

Date:  5/11/2021

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel